IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ASHANTI JOHNSON, Ph.D., ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:20-cv-256 (MTT) |
| ) | |
| CIRRUS EDUCATION GROUP, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Cirrus Education Group, Inc., ("Cirrus"), moves for summary judgment on Plaintiff Ashanti Johnson, Ph.D.'s claims under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601; Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112; Rehabilitation Act ("RA"), 29 U.S.C. § 794; Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d)(2); and state law claims for breach of contract, unjust enrichment, intentional destruction of personal property, and negligent damage of personal property. Doc. 29.  For the following reasons, the motion for summary judgment (Doc. 29) is **GRANTED in part** as to Johnson's FMLA claims, **GRANTED in part** as to her ADA claims and RA claims, and **DENIED without prejudice** as to her state law claims.

**I. BACKGROUND**

This record is challenging.  There are many gaps in the evidence Cirrus marshals to support its motion, and it seems Johnson did virtually no discovery.  Moreover, the parties' briefs are substantially less than helpful.  But the following facts, unless otherwise noted, are undisputed.

Cirrus is a domestic non-profit corporation that operates Cirrus Academy, a charter school located in Macon, Georgia. Docs. 29-2 ¶¶ 1-2; 36-1 ¶¶ 1-2. Cirrus recruited Johnson to be its "school leader" in 2016, a few months before Cirrus accepted its first class of students for the 2016-2017 school year. Docs. 29-2 ¶¶ 7-8; 36-1 ¶¶ 7-8. Johnson's initial contract provided a term of two years, beginning May 23, 2016, for the 2016-2017 and 2017-2018 school years. Docs. 29-2 ¶ 11; 29-8 at 2; 36-1 ¶ 11. In 2018, Cirrus and Johnson negotiated a second contract for the 2018-2019 school year. Docs. 29-2 ¶¶ 19, 21; 36-1 ¶¶ 19, 21.

Johnson's claims about what happened or didn't happen prior to 2019 are vague. Generally, she claims that she was denied requests for FMLA leave "after the initial year of her employment;" that her request for leave in summer of 2018 for a medical procedure was granted, but Cirrus required her to work during the leave; and that she requested to work remotely as an accommodation for her disabilities on a number of unspecified occasions. Doc. 11 ¶¶ 98, 114, 152, 177.

In January 2019, Johnson requested medical leave, which Cirrus granted.[1] Doc. 29-2 ¶¶ 40-41; 36-1 ¶¶ 40-41. Although Johnson originally planned to return to work on February 4, 2019, she subsequently requested that her leave be extended to March 16, 2019; then May 6, 2019; then June 6, 2019; then June 10, 2019; then until sometime in August 2019. Docs. 29-2 ¶¶ 42-46, 48-49, 53-54, 58-62; 36-1 ¶¶ 42-46, 48-49, 53-54, 58-62. All but the final request, which extended beyond the term of Johnson's contract, were granted. *Id.* During Johnson's leave, Cirrus repeatedly contacted her—Cirrus

---

[1] Johnson disputes ¶ 41 on the basis that she requested FMLA leave and was instead granted ADA leave. Johnson also disputes ¶ 41 because she contends that she was made to work during her leave period. Nevertheless, it is clear, and Johnson does not dispute, that Cirrus agreed that Johnson would take a period of leave.

contends that its communication efforts were requests for meetings to discuss her transition back to work, forwarding her an evaluation prepared by the governing board, and providing her an opportunity to respond to the evaluation, all of which Johnson refused or failed to respond to.  Doc. 29-2 ¶¶ 47, 50-51, 55; 36-1 ¶¶ 47, 50-51, 55.  Johnson disputes these facts, claiming she did not decline meetings to discuss her return to work or decline to respond to the governing board's evaluation, but rather that she indicated a willingness to respond once her doctor had allowed her to return to work.  Docs. 29-2 ¶¶ 47, 50-52, 55-56; 36-1 ¶¶ 47, 50-52, 55-56.

The governing board made final its evaluation of Johnson on May 15, 2019, but allowed Johnson an opportunity to respond after her scheduled return to work on June 10.  Docs. 29-2 ¶ 57; 36-1 ¶ 57; 36-10.  However, Johnson did not return to work and there is no indication in the record that she responded to the evaluation.  *Id.*  The governing board voted not to renew Johnson's contract, and her employment ended on June 30, 2019.  Docs. 29-2 ¶¶ 61, 73; 36-1 ¶¶ 61, 73.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex*, 477 U.S. at 324) (alterations in original).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

## III.  DISCUSSION

### A. Johnson's FMLA claims arising during fiscal years 2017 and 2018 fail because Johnson was not an eligible employee

The FMLA provides eligible employees up to twelve weeks of unpaid leave in a one-year period for "serious health condition[s] that mak[e] the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  There are two types of claims that can be asserted under the FMLA— interference claims and retaliation claims.  *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).  For an employee to be eligible for FMLA rights and protection, she must be employed by an employer who employs "at least 50 employees … within 75 miles" of the institution.  29 C.F.R. § 825.600(b); 29 U.S.C. § 2611(2)(B)(ii).  "For example, employees of a rural school would not be eligible for FMLA leave if the school has fewer than 50 employees and there are no other schools under the jurisdiction of the same employer (usually, a school board) within 75 miles."  29 C.F.R. § 825.600(b).

Johnson raises three FMLA claims— two counts for interference, and one count for retaliation.  Doc. 11 ¶¶ 95-145.  Specifically, Johnson claims that Cirrus refused to provide FMLA leave that she was entitled to, that when Cirrus did allow her to take leave, it also required her to work during the leave, and that Cirrus retaliated against her for taking leave in 2019 when it refused to renew her contract.  *Id.*; Doc. 36 at 4-5.

Cirrus argues that Johnson was not an eligible employee and thus not entitled to FMLA leave because Cirrus Academy employed fewer than 50 employees.  Doc. 29-1 at 14.  Johnson disputes that.  Doc. 36 at 6.  She argues (1) that the declaration of Sheldon Hart, the President of Cirrus's governing board, attesting to the number of

Cirrus employees should be disregarded because it is "self-serving" and fails to address Johnson's claims arising before 2019; (2) that it was "impossible" for Johnson to ascertain whether contractors paid in 2016 and 2017 should have been considered employees because Cirrus failed to properly disclose requested information about employees during the 2016-2017 school year; (3) that Johnson has provided testimony that suggests Cirrus had more than 50 employees in 2018; and (4) that for 2019, Cirrus's employee roster contradicts Hart's declaration.  Doc. 36 at 5-7.

The evidence on this issue consists of Cirrus's employee rosters for fiscal years 2017, 2018, and 2019 (Doc. 36-13); Hart's declaration (Doc. 29-3); and Johnson's deposition testimony (Doc. 29-7).  The rosters reveal that Cirrus employed 47 employees in fiscal year 2017, 48 employees in fiscal year 2018, and 57 employees in fiscal year 2019.  Doc. 36-13.  The rosters also include the number of contractors and vendors who were paid in each year.  *Id.*  Hart's declaration states that during Johnson's 2019 leave, Cirrus had fewer than 50 employees.  Doc. 29-3 ¶ 51.  The declaration does not address the possible conflict between Hart's statement and Cirrus's fiscal year 2019 roster.  Nor does the record reveal when Cirrus's fiscal year began.

> 1. *Hart's declaration should not be disregarded, but the declaration does not establish that Cirrus had fewer than 50 employees during Johnson's 2019 employment*

Johnson contends that Hart's declaration should be disregarded as it "arguably" does not comply with the appropriate rules, for which she cites Rule 56(c)(4) and an unreported Eleventh Circuit case, *Berber v. Wells Fargo, NA.,* 198 F. App'x 476, 480 n.3 (11th Cir. 2020) (discussing *United States v. Stein*, 881 F.3d 853, 858 (11th Cir. 2018);

Doc. 36 at 5.  Rule 56(c)(4) requires that: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Hart states that he has personal knowledge of the information within his declaration and that he is competent in his declaration, and Johnson has made no substantive arguments against those statements.  Doc. 29-3 ¶ 1.  The number of employees employed at the time of Johnson's leave is a fact that is admissible as evidence.[2]  And it is reasonable that the president of a school's governing board would have a basis for personal knowledge of the school's employees.  As to Johnson's argument that Hart's declaration is self-serving: "Nothing in Rule 56 prohibits an otherwise admissible affidavit from being self-serving.  …  A non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated."  *United States v. Stein*, 881 F.3d 853, 857, 858-59 (11th Cir. 2018).

Thus, the affidavit's conclusory statement that "[d]uring Johnson's leave, Cirrus had fewer than fifty (50) employees" is admissible.  Doc. 29-3 ¶ 51.  But Hart does not address Cirrus's employee roster identifying 57 employees during the 2019 fiscal year.  Doc. 36-13.  It is certainly possible that Cirrus then employed fewer than 50 employees but to find that fact undisputed requires and explanation of why 57 employees are on the roster.  One obvious possible explanation would be that the roster includes employees hired after Johnson's contract ended.  But on the record the Court cannot say it is undisputed that Cirrus had fewer than 50 employees during the time Johnson was employed in 2019.

---

[2] Of course, it was not "impossible" for Johnson to depose Hart to challenge his declaration.  Doc. 36 at 6.

> 2. *It was not "impossible" for Johnson to ascertain Cirrus's employees accurately; rather, Johnson conducted insufficient discovery*

Johnson argues that she requested that Cirrus identify all employees and independent contractors during the 2016-2017 academic year, and that instead of complying with that request, Cirrus provided information regarding its employees during the 2017 fiscal year.  Doc. 36 at 6.  Additionally, Johnson contends that "because Defendant refused to provide any additional information concerning the employee relationship of its 'vendors/contractors' … it is impossible for Dr. Johnson to ascertain which of the nearly 100 'vendors/contractors' … should have been properly classified as employees."  *Id*.  But, as far as the record reveals, Johnson made no attempt to confer with Cirrus as required by Federal Rule of Civil Procedure 37 or to notify Cirrus or the Court of any deficiencies in its discovery responses.  Doc. 38 at 3 n.2.  In fact, as far as the record reveals, Johnson did little discovery.  Doc. 38 at 2 n.1.  Because nothing suggests that Johnson made any effort to challenge Cirrus's employee rosters, her claim that it was "impossible" for her to determine whether the rosters were accurate falls flat.

> 3. *Johnson's deposition testimony does not overcome Cirrus's evidence about its number of employees for fiscal years 2017 and 2018*

Johnson testified that she thinks certain workers might have been misclassified as vendors or contractors rather than employees.  Doc. 29-7 at 139-143.  Johnson identified only three individuals who she believed may be misclassified: Nurse Tukes, Sonja Riley, and a man who worked as a substitute teacher whose last name was Josey.  *Id.*  However, Johnson has failed to present evidence that these individuals—or anyone else for that matter—were misclassified as contractors.  Johnson is wrong about

Tukes—she is listed for all three years as an employee. Doc. 36-13. And Josey fails to appear on the list at all, which may or may not indicate an error on the part of Cirrus, but this issue was not developed during discovery. Moreover, Johnson conceded in her deposition that substitute teachers generally were paid separately from standard employees and that she understood many of the employees she referenced were actually "operating based on contracts with Cirrus" rather than as employees Doc. 29-7 at 139:8-143:8. Accordingly, even if Josey had been listed, he would have been a contractor rather than an employee. Johnson has no evidence and cites no authority suggesting Josey was misclassified. As for Sonja Riley, who performed human resources services and in some capacity interacted with parents, Johnson has also failed to develop evidence suggesting that Riley was misclassified. *Id.* In any event, even if Riley was misclassified, it would make no difference for fiscal years 2017 and 2018—Cirrus still had fewer than 50 employees. *See* Doc. 36-13.

It is undisputed that for fiscal years 2017 and 2018 Cirrus employed fewer than 50 employees, and consequentially, Johnson was not an eligible employee for those years. Thus, any claims arising in those years fail.

This ruling appears to resolve Johnson's refusal to provide leave claim (Count I) in its entirety. Cirrus moved for summary judgment on that claim on the grounds it provided more than the required leave during Johnson's 25 weeks of leave in 2019. In response, Johnson contends this argument is irrelevant because she only seeks in Count I recovery for "improperly denied … FMLA leave during the 2017-2018 academic year. (See Doc. 11 ¶¶ 95-109)." Doc. 36 at 7-8. The Court accepts Johnson's admission *in judicio* that Count I is limited to the 2017-2018 academic year. Thus, the

Court's ruling that Johnson was not a qualified individual prior to fiscal year 2019 appears to resolve, at the very least, Count I.

> 4. *The parties will address the status of Johnson's 2019 fiscal year FMLA claims at a hearing*

The question then is where this leaves Johnson's FMLA claims, one of the many questions the parties do not address. The Court will convene a hearing so the parties can address the issue. For now, Cirrus's motion for summary judgment on Johnson's FMLA claims is granted to this extent: Johnson was not an eligible employee for fiscal years 2017 and 2018. Otherwise, the motion is **DENIED without prejudice.**

### B. Johnson's ADA and RA claims fail in part because Johnson has failed to make a prima facie case, and because she has failed to rebut Cirrus's legitimate, nondiscriminatory reasons for not extending her contract

Johnson raises claims under the ADA for failure to provide reasonable accommodations and for discriminating against her on the basis of her disability. Doc 11. Specifically, Johnson alleges that Cirrus failed to provide her a reasonable accommodation in the form of remote work on occasions when her symptoms were at their most severe (Count IV) (Doc. 11 ¶ 153), and that Cirrus ultimately terminated her because of her disability (Count V) (Doc. 11 ¶ 164). Johnson also raised failure to provide an accommodation and discrimination claims under the RA on the same grounds (Counts VI and VII). Doc. 11. Here, the parties' briefs are at their worst.

"Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases. … Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d. 1301, 1305 n.2 (11th Cir. 2000); *see also* 29 U.S.C. § 794(d). To establish a prima facie case

under the ADA, a plaintiff must show that she (1) is disabled; (2) is a qualified individual; and (3) that she was subjected to unlawful discrimination as a result of her disability. *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007). "[A] person must be able to perform the essential functions of his or her job with or without a reasonable accommodation" in order to be considered "a qualified individual" under the ADA. *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003).

A reasonable accommodation is one which "presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Id.* at 1313. "Essential job functions are 'fundamental job duties of a position that an individual with a disability is actually required to perform.'" *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). An employee bears the burden of identifying an accommodation that would allow her to perform the essential functions of her job. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001). And at the summary judgment stage, the employee must produce evidence that a reasonable accommodation was available. *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997). When the employee fails to identify a reasonable accommodation, there is no affirmative duty upon the employer to engage in an "interactive process" to determine what reasonable accommodations might be available or to show undue hardship that would excuse the employer from granting accommodations. *Earl*, 207 F.3d at 1367.

> 1. *Cirrus has not developed the record sufficiently to show that Johnson is not a qualified individual because she could not perform the essential functions of her job with a reasonable remote work accommodation*

Cirrus argues, it seems, that Johnson cannot make out a prima facie case under the ADA because she has not shown that she was a qualified individual who could have

-11-

performed the essential functions of her job with a reasonable accommodation.  Doc. 29-1 at 17-18.  Cirrus contends that Johnson admits that she would not have been able to perform any of her "day-to-day" tasks with the accommodation of remote work.

With a better developed record, Cirrus could perhaps demonstrate that Johnson failed to establish that she could perform the essential functions of her job with a remote work accommodation.  Whether a task is an essential function of an employee's job is determined according to "a factual inquiry [that is] to be conducted on a case-by-case basis" according to a variety of factors.  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001).  And the ADA regulations provide a significant number of factors to consider when going through the factual analysis of a given duty.  29 C.F.R. § 1630.2(n)(3).[3]  The Court cannot conclude from the brief deposition testimony cited by Cirrus that Johnson could not perform the essential functions of her job with a remote work accommodation, particularly given that Cirrus liberally allowed her to work remotely.

> 2. *Johnson's failure to accommodate claims arising before her extended leave fail because she has not identified any instance where she was not allowed to work remotely*

Johnson's testimony defeats her claims for failure to provide the accommodation of remote work.  In her complaint, Johnson alleges that "all other administrative employees were allowed to work remotely other than [her]" and that Cirrus "refused to provide the accommodation" of remote work.  Doc. 11 ¶¶ 153, 155, 179.  Yet Johnson

---

[3] The ADA regulations include factors such as: "(1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 C.F.R. § 1630.2(n)(3)).

testified that Cirrus allowed her to work remotely before her extended leave, and she cites no instance in which she was not allowed to work remotely. Doc. 29-7 at 185:3-186:3. Johnson did suggest that there was an issue in the calculation of her leave, but she never testified that she was denied the accommodation of remote work. *Id.* at 183-85. Thus, as a matter of undisputed fact, Johnson's failure to accommodate claims (Counts IV and VI) fail. But the Court cannot tell from Cirrus's brief if it moved for summary judgment on that ground.

> 3. *Johnson has failed to make out a prima facie case for disability discrimination related to her termination because she was not a qualified individual during her extended leave*

Cirrus argues that Johnson's leave from January 2019 until the end of her contractual term was the only accommodation she sought during that period, and it was not a reasonable accommodation. The Court agrees that Johnson has not established that she was a qualified individual when her extended leave became indefinite. While Johnson requested remote work prior to her leave in January 2019, Johnson admitted that she never requested to work remotely after she began her leave in January 2019.[4] Doc. 29-7 at 185:14-24. Thus, the only accommodation that Johnson sought in the months preceding her termination was leave.

Leave for an indefinite period is not a reasonable ADA accommodation. *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997). This principle derives from the text of the ADA itself:

> Significantly, these provisions [for reasonable accommodations under the ADA] contain no reference to a person's *future* ability to perform the

---

[4] As discussed above, remote work was arguably a reasonable accommodation prior to Johnson's leave in January 2019. However, Johnson admits that remote work would not have allowed her to perform her duties during her period of indefinite leave in 2019. Doc. 29-7 at 220:16-24.

essential functions of his position.  To the contrary, they are formulated entirely in the present tense, framing the precise issue as to whether an individual "can" (not "will be able to") perform the job with reasonable accommodations.  Nothing in the text of the reasonable accommodation provision requires an employer to wait for an indefinite period for an accommodation to achieve its intended effect.  Rather, reasonable accommodation is by its terms most logically construed as that which, presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.

*Id.* at 1266 (quoting *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995) (internal citations omitted).  Indeed, any accommodations that only allow an employee to work "at some uncertain point in the future" are inherently unreasonable.  *Monroe v. Fla. Dept. of Corrections*, 793 Fed. App'x. 924, 927 (11th Cir.) (quoting *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003)).  Summary judgment is appropriate where the plaintiff fails to show that the requested accommodation would allow her to return to work "in the present or in the immediate future." *Billups v. Emerald Coast Utilities Authority*, 714 Fed. App'x. 929, 934 (11th Cir. 2017) (citing *Wood,* 323 F.3d. at 1314).

Here, Johnson's leave was extended from its initial month-long period five times, ultimately resulting in a period of leave from January to sometime in August 2019.  Docs. 29-2 ¶¶ 42-46, 48-49, 53-54, 58-62; 36-1 ¶¶ 42-46, 48-49, 53-54, 58-62.  Her leave exceeded the scope of her contract, which ended on June 30, 2019.  And after those repeated extensions, each one occurring near the end of the Scheduled period of leave, there was no indication that Johnson was "presently, or in the immediate future" able to complete the essential functions of her job.  *Duckett*, 120 F.3d at 1266.  Clearly, Johnson's leave became indefinite, and accordingly, not a reasonable accommodation that

afforded Johnson ADA protections.  Thus, Johnson was not a qualified individual when Cirrus decided not to extend her contract.

> 4. *Even if Johnson had established a prima facie case, she has not shown that Cirrus's legitimate, nondiscriminatory reasons for not extending her contract were pretextual*

Finally, for her disability discrimination claims in Counts V and VII, Johnson's claims would fail even if she had stated a prima facie case of discrimination, because Johnson failed to address the legitimate, nondiscriminatory reasons Cirrus cited for its adverse action against her.  To rebut a prima facie case of disability discrimination where there is no direct evidence of discrimination, an employer must produce a legitimate, nondiscriminatory reason for the adverse action against the employee.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).  The employer's burden is only to "raise[ ] a genuine issue of fact as to whether it discriminated against the plaintiff," not to persuade the Court that it was actually motivated by its proffered reasons.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also Meeks v. Comput. Assocs. Int'l*, 15 F.3d. 1013, 1019 (11th Cir. 1994) ("[T]he defendant must merely proffer non-[discriminatory] reasons, not prove them.").  Once the employer has satisfied its burden of production, the plaintiff must establish that the purported reason was pretextual.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  Cirrus claims that Johnson's "ongoing performance issues" and the disadvantages it faced because of Johnson's "indefinite absence" were legitimate,

nondiscriminatory reasons for the nonrenewal of Johnson's contract.  Doc. 29-1 at 20.  Johnson did not respond to this argument in her brief, and therefore, has not met her burden of showing that the proffered legitimate, nondiscriminatory reasons were pretextual.

The Court will address at the hearing where this leaves Johnson's ADA and RA claims.

### C. Cirrus's motion for summary judgment on Johnson's state law claims is denied without prejudice

The parties' briefing on Johnson's state law claims is cursory, but in its reply brief, Cirrus claims it was entitled to "sovereign immunity" from Johnson's state law claims.  Doc. 38 at 9.  Because Johnson did not request an opportunity to brief that dispositive issue, the Court afforded her that opportunity by ordering her to show cause why her state law claims are not barred by Eleventh Amendment immunity.  Doc. 40.  For now, Cirrus's motion for summary judgment on Johnson's state law claims is **DENIED without prejudice**.

### IV. CONCLUSION

For the reasons discussed above, the motion for summary judgment (Doc. 29) is **GRANTED in part** as to Johnson's FMLA claims, **GRANTED in part** as to her ADA claims and RA claims, and **DENIED without prejudice** as to her state law claims.

**SO ORDERED**, this 1st day of September, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
